UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| HARRY DAVID EVANS, | 5:24-CV-05051-RAL |
| Petitioner, | |
| vs. | OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS |
| MARTY JACKLEY, ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, WARDEN JOSEPH ROEMMICH, | |
| Respondents. | |

Petitioner Harry David Evans received a life sentence after a South Dakota jury found him guilty of rape, kidnapping, and several other crimes. The Supreme Court of South Dakota affirmed his conviction on direct appeal, State v. Evans (Evans I), 956 N.W.2d 68 (S.D. 2021), and rejected his state habeas petition, Evans v. Sullivan (Evans II), 9 N.W.3d 490 (S.D. 2024). Evans petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court, seeking to vacate his convictions and have his case remanded for a new trial. Doc. 1. Respondents, South Dakota Attorney General Marty Jackley and Warden Joseph Roemmich, moved to dismiss the petition under Federal Rule of Civil Procedure 12(b)(6). Doc. 9. Magistrate Judge Veronica L. Duffy issued a report and recommendation that Respondents' motion to dismiss be granted. Doc. 21. Respondents and Evans have now objected to the report and recommendation.[1] Docs. 24, 25. Having reviewed de

---

[1]Evans's attorney objected to the report and recommendation, but Evans also filed some pro se objections. Doc. 26. Evans is represented by capable counsel, and this Court declines to consider his pro se objections. See United States v. Tollefson, 853 F.3d 481, 485 (8th Cir. 2017) ("A district

novo those portions of the report and recommendation to which the parties object, this Court adopts the report and recommendation.

## I.    Facts

The facts of Evans's crimes and trial are laid out more fully in Evans I, Evans II, and the report and recommendation.  In short, Evans met S.B. on a dating website in 2016 while she was going through a divorce.  Evans I, 956 N.W.2d at 74; CR at 1337–38.[2]  They developed a romantic but tumultuous relationship.  Evans I, 956 N.W.2d at 74–75; CR at 1342–46.  Although S.B. allowed Evans to move in with her, she called the police in December 2016 after Evans trapped her in the basement and threatened to kill her.  Evans I, 956 N.W.2d at 74; Evans II, 9 N.W.3d at 495; CR at 1346–54.  She called the police again in January 2017, alleging that Evans had told her he would rape or kill her.  Evans I, 956 N.W.2d at 75; CR at 1354–56.  But when Evans was arrested after a similar incident, S.B. called his attorney and said Evans had merely been trying to stop her from driving while intoxicated.  Evans II, 9 N.W.3d at 495; CR at 1930–32.

S.B. eventually got a temporary protection order against Evans in July 2017 and a permanent protection order against him in August 2017.  Evans I, 956 N.W.2d at 75; CR at 1368–77.  She called the police on September 5, 2017, after receiving what she felt was a threatening message from him.  Evans I, 956 N.W.2d at 75; CR at 1397–1401.  Hermosa Town Marshal Jim Daggett searched S.B.'s property but could not find Evans.  Evans II, 9 N.W.3d at 496; CR at 1401–02.  S.B. testified that she awoke very early the next morning to Evans beside her in bed.

court is not required to entertain pro se motions filed by a represented party." (cleaned up and citation omitted)); United States v. Blum, 65 F.3d 1436, 1443 n.2 (8th Cir. 1995) ("Generally it is Eighth Circuit policy to refuse to consider pro se filings when a party is represented by counsel.").
[2]Judge Duffy took judicial notice of the state court records in Evans's criminal and habeas cases, and this Court does as well.  This Court cites the records from Evans's criminal record as "CR," the records from his direct appeal as "AR," the records from his habeas case as "HR," and the record from his habeas appeal as "HAR."

Evans II, 9 N.W.3d at 496; CR at 1412.  He wrapped her in duct tape, forced her to take sleeping pills, and eventually raped her. Evans II, 9 N.W.3d at 496; CR at 1412–24. Evans made S.B. give him a ride to his partially spraypainted pickup he had parked down the road from her house and threatened to kill her if she told anyone what happened. Evans I, 956 N.W.2d at 75–76; CR at 1425–33. Marshall Daggett returned to S.B.'s home later that morning to check on her. Evans I, 956 N.W.2d at 76; CR at 1434–35. After some prompting from Daggett, S.B. reported that Evans had raped her. Evans I, 956 N.W.2d at 76; CR at 1435–36.

State law enforcement officers obtained an arrest warrant for Evans and a search warrant for his pickup. Evans I, 956 N.W.2d at 76.  They located the pickup at a casino and hotel on the Pine Ridge Indian Reservation. Id.  Working with tribal police officers, state law enforcement arrested Evans in a hotel room and seized his pickup. Id. at 76–77.  A state grand jury charged Evans with second-degree rape, first-degree kidnapping, aggravated assault, stalking, violating a protection order, and first-degree burglary. Id. at 77.

Attorneys Ellery Grey and Paul Eisenbraun represented Evans.  CR at 1308.  Before trial, Circuit Court Judge Jeff W. Davis ruled that other acts testimony from Evans's ex-wife Kathy Evans[3] was relevant and admissible to prove motive and a common plan. Evans I, 956 N.W.2d at 78. Kathy told the jury that, after they had separated, Evans broke into her house with a gun, made her strip, and tried to force her to have sex. Id. at 79.  She also described another occasion when police found an unconscious Evans locked inside Kathy's bedroom with a gun in an apparent suicide attempt. Id. at 79–80. The jury convicted Evans of all six charges after a five-day trial. Evans II, 9 N.W.3d at 496.

---

[3]This Court refers to Kathy Evans by her first name to avoid confusion.

The Supreme Court of South Dakota affirmed Evans's convictions on direct appeal and Evans then filed a habeas petition in state court. HR at 1–34. A state court judge held an evidentiary hearing at which Grey, Eisenbraun, and Evans testified. HR at 183–84. The judge ultimately dismissed Evans's petition, and the Supreme Court of South Dakota affirmed. Evans II, 9 N.W.3d at 494–95. Evans then filed his § 2254 petition in this Court alleging that his attorneys were ineffective in several ways (Ground I); that he was denied due process and his Fourth, Fifth, and Fourteenth Amendment rights when state law enforcement officers entered the Pine Ridge Indian Reservation without a tribal warrant or authorization and seized evidence from him, his hotel room, and his pickup (Ground II); and that the admission of Kathy's other-acts testimony denied him due process (Ground III). Doc. 1.

## II.    Legal Standard

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murrillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). This Court has reviewed de novo the record and the parties' objections.

## III.   Analysis

### A. AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) makes succeeding on a federal habeas petition difficult, even when prisoners follow all of a state's procedural rules and properly exhaust their claims in state court. Section 2254(d) bars federal courts from granting relief on any claim "that was adjudicated on the merits in State court" unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). This "difficult to meet and highly deferential standard for evaluating state-court rulings" requires "that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (cleaned up and citations omitted).

A state court decision is contrary to federal law under AEDPA "if it (1) contradicts a rule set forth in the Supreme Court's cases or (2) confronts a set of materially indistinguishable facts and arrives at a different result." Dansby v. Payne, 47 F.4th 647, 655 (8th Cir. 2022) (cleaned up and citation omitted). And a "decision unreasonably applies federal law if the state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context." Id. at 656 (cleaned up and citation omitted). Prisoners claiming an unreasonable application of federal law "must show that a state court's adjudication was not only wrong, but also objectively unreasonable, such that fairminded jurists could not disagree about the proper resolution." Id. (citation omitted). This Court evaluates "the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." Zornes v. Bolin, 37 F.4th 1411, 1415 (8th Cir. 2022); see also Springs v. Payne, 95 F.4th 596, 600–01 (8th Cir. 2024) (citing Zornes and Wilson v. Sellers, 584 U.S. 122 (2018)). AEDPA also demands that a state court's

factual determinations "shall be presumed to be correct," and gives the petitioner the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B. Ground I: Ineffective Assistance of Counsel

Ground I of Evans's petition alleges that his trial attorneys were ineffective by (1) failing to call Lisa Anderson as a witness to rebut and impeach S.B.; (2) failing to use records and photographs to rebut S.B.'s testimony; (3) failing to call Evans as a witness; and (4) failing to object to Judge Davis's noncompliance with jury selection statutes and dismissal of jurors without cause. Doc. 1 at 5.

A petitioner claiming ineffective assistance must show both that counsel's performance was constitutionally deficient and that he was prejudiced by this deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, Evans must show that counsel's "representation fell below an objective standard of reasonableness" given "all the circumstances." Id. at 688. This standard is "highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Evans has the burden of showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687.

To establish prejudice, Evans must show a "reasonable probability" that, but for his attorneys' deficient performance, the outcome of his trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "That requires a substantial, not just conceivable, likelihood of a different result." Cullen, 563 U.S. at 189 (cleaned up and citation omitted). Petitioners must meet both Strickland prongs to succeed on an ineffectiveness claim, and courts can begin (and perhaps end) with either prong.

Williams v. Norris, 576 F.3d 850, 858 (8th Cir. 2009). Federal habeas courts reviewing a state court's application of Strickland must layer deference upon deference, taking "a highly deferential look at counsel's performance" under Strickland "through the deferential lens of § 2254(d)." Cullen, 563 U.S. at 190 (cleaned up and citation omitted).

### 1. Failure to Call Lisa Anderson

Evans alleges that his attorneys were ineffective by failing to call his sister, Lisa Anderson, as a witness. Doc. 1 at 5. He claimed in his state habeas petition that Anderson's testimony would have rebutted the State's suggestion that he was just an employee of S.B. who became obsessed with her and attacked her after she ended their relationship. See HR at 5–6; HAR at 40. According to Evans, Anderson would have testified that S.B. and Evans presented themselves as a couple and that they would join Anderson's family for holidays and get togethers. HR at 6; Evans II, 9 N.W.3d at 502. She also would have described S.B.'s drinking and overuse of Ambien, S.B. being upset with Evans over a land deal, and S.B.'s desire to hide her cohabitation with Evans to secure a favorable property division in her ongoing divorce. HR at 6–7.

Grey testified at the state habeas hearing that he chose not to call Anderson as a witness because her testimony would have been "redundant to things [he] thought had already been fairly well established" and he was concerned her cross-examination could go badly. HR at 212–13; see also id. at 255–59. The Supreme Court of South Dakota found Grey's decision reasonable, explaining that much of what Anderson would have testified to came out during Grey's cross-examination of S.B. Evans II, 9 N.W.3d at 502. Indeed, S.B. admitted that she had celebrated holidays with Evans and his family, that she and Evans had been intimate just three months before the attack, and that she would lose $2,500 in monthly alimony if her ex-husband showed that she and Evans were cohabitating. CR at 1473, 1475, 1527, 1583–84. The Supreme Court of South

Dakota also held that Evans had failed to show prejudice because he never made an offer of proof for Anderson's proposed testimony, and it would have been duplicative in any event. Evans II, 9 N.W.3d at 504. Judge Duffy found the Supreme Court of South Dakota's decision reasonable under § 2254. Doc. 21 at 28.

Evans objects. He argues that the Supreme Court of South Dakota and Judge Duffy erred because the last evidence the jury heard about the relationship was testimony from Marshal Daggett that Evans had done odd jobs around S.B.'s property and that S.B. considered Evans a friend until recently. See CR at 1670–71. This testimony, Evans argues, created a dispute over whether he and S.B. were in a tumultuous, on-and-off relationship or whether he was merely a ranch hand who became obsessed with his employer. Doc. 25 at 5–6. Evans claims that Anderson's testimony could have rebutted the State's inference "that Evans was merely an employee who was stalking S.B." Id.

Evans's objection is overruled. There was never any question that Evans and S.B. were in an intimate yet volatile relationship. The State admitted as much in opening statements and S.B.'s testimony only made the point clearer. See CR at 1312. S.B. testified on direct examination that she developed a romantic relationship with Evans after meeting him through an online dating site. CR at 1338–43. The relationship became intimate, and Evans and S.B. shared a bedroom in S.B.'s home. Id. at 1343. S.B. described the tumultuous, on-and-off nature of their relationship for the jury, including admitting that she had been intimate with Evans a few times even after he was arrested for assaulting her. Id. at 1343–98, 1486, 1490, 1494–96, 1591; Evans II, 9 N.W.3d at 495. Marshal Daggett's testimony did not create a dispute over Evans's relationship with S.B. that Anderson could have rebutted, and Evans has come nowhere close to showing that the Supreme Court of South Dakota unreasonably applied Strickland's deferential standard. After all, the

8

"decision not to call a witness is a virtually unchallengeable decision of trial strategy." <u>Ford v. United States</u>, 917 F.3d 1015, 1024 (8th Cir. 2019) (citation omitted).  Grey reasonably decided that calling Anderson as a witness was not worth the risk given the already-admitted evidence about Evans's relationship with S.B.  <u>See id.</u> at 1025 ("[T]here is considerable risk inherent in calling any witness; if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences against the party who called him or her." (cleaned up and citation omitted)).

### 2.  Failure to Offer Phone Records and Pictures

Evans's next ineffective assistance argument relates to his first; he claimed in his state habeas petition that Grey was ineffective by failing to introduce phone records, text messages, and photographs provided by Evans and his family to rebut S.B.'s testimony that she had a minimal relationship with Evans.  HR at 23–25.  As with Anderson's proposed testimony, Grey testified that he did not offer the phone records and other evidence because he felt it would have been cumulative given S.B.'s testimony about her relationship with Evans.  HR at 236–37; 282–83.  The Supreme Court of South Dakota found Grey's decision reasonable and held that Evans had failed to show prejudice because the phone records "would have established only contacts, or attempted contacts, between [Evans and S.B.] without evidence of content or further context."[4]  <u>Evans II</u>, 9 N.W.3d at 502, 504.  Judge Duffy concluded that the Supreme Court of South Dakota's decision was reasonable under § 2254.  Doc. 21 at 29.

---

[4]As Judge Duffy recognized, the Supreme Court of South Dakota's opinion discussed the phone records but did not mention text messages or photographs.  Evans doesn't argue that de novo review applies to the text message and photograph aspects of his claim, and this claim would fail even if it did.

Evans objects, arguing that the phone records and other evidence were not redundant because they would have shown S.B.'s frequent contact with Evans during times when a protection order was in place. Doc. 25 at 6. This objection is overruled. Grey knew of the phone records and other evidence but made a strategic decision not to use them. HR at 197, 235–37, 282–83, 310–12. Although Evans argues that Grey never presented evidence that S.B. contacted Evans while a protection order was in place, S.B. admitted to having consensual sex with Evans even after she became afraid of him and he had been arrested for assaulting her. CR at 1346–57; 1486, 1496–1500, 1527, 1591, 1930–33; Evans II, 9 N.W.3d at 495. Grey also offered evidence that S.B. contacted Evans's lawyer after one of his arrests and said that she wanted all the charges dismissed because Evans had merely been trying to stop her from driving drunk. CR at 1931–33. The Supreme Court of South Dakota reasonably found that Grey's decision not to use the phone records fell "within the wide range of professionally competent assistance." Buck v. Davis, 580 U.S. 100, 118 (2017) (cleaned up and citation omitted). The court's finding on prejudice was also reasonable. The court noted that the phone records would only have shown contacts between S.B. and Evans, not what they were saying to each other. Evans II, 9 N.W.3d at 504. This finding was apparently based on Grey's description of the records during the habeas hearing, as Evans never offered the records during the hearing and does not point where they are now. HR at 184, 320–21. And though Evans offered a photo at the hearing showing he and S.B. together at a family Christmas party, id. at 336–39, this photo would have been cumulative to S.B.'s admission that she celebrated Christmas with Evans's family, CR at 1475. Evans never offered any texts messages during his state habeas hearing, and speculation about what those messages might have said is not enough to show a reasonable probability that the result of his trial would have been different. See Armstrong v. Kemna, 534 F.3d 857, 867 (8th Cir. 2008) ("Ordinarily, a defendant's

failure to present some evidence from the uncalled witness regarding that witness's potential testimony would be fatal to an ineffective assistance of counsel claim." (cleaned up and citation omitted)); United States v. Vazquez-Garcia, 211 F. App'x 544, 546 (8th Cir. 2007) (unpublished per curiam) (declining to find that counsel's failure to interview a witness prejudiced the petitioner when the petitioner did not offer any independent evidence about what the witness would have said).

### 3. Failure to Call Evans as a Witness

Evans alleges that Grey was ineffective by not calling him as a witness "even after the stated reason for not calling him had disappeared." Doc. 1 at 5. He claimed in his state habeas petition that Grey "failed to call [him] as a witness" and "told him that he should not testify." HR at 9. According to the petition, Evans would have testified that he and S.B. "enjoyed rough sex and that the events on the night in question were simply part of that dynamic." HR at 11. Grey explained at the habeas hearing that defendants have an "absolute right" to testify and that he had discussed this right with Evans. HR at 261–62, 451–54. Grey advised Evans not to testify, though, explaining that he was concerned about whether the jury would find Evans's version of events credible, and about Evans being cross-examined on the other acts evidence involving his ex-wife, Kathy. Id. at 219–30, 261–76. Grey also believed that having Evans testify would detract from Grey's strategy of keeping the jury focused on S.B.'s credibility. Id. at 219–20, 273–74. Grey said that although they had continued to discuss throughout trial the possibility of Evans testifying, Evans had agreed with his advice not to take the stand. Id. at 453–54. Evans told a different story at the habeas hearing; he claimed that although he wanted to testify at trial, Grey told him he "couldn't." Id. at 352, 354. He also alleged that he did not learn that he had a right to testify until after his trial. Id. at 354.

The Supreme Court of South Dakota held that Evans had shown neither deficient performance nor prejudice. Evans II, 9 N.W.3d at 503–04. It found Grey's advice against testifying reasonable, concluding that Evans's testimony "would have come at considerable risk" and would have "expand[ed] the defense into a comparison of relative credibility between S.B. and Evans." Id. at 504. It also rejected Evans's prejudice argument, reasoning that Evans overstated the impact of his testimony when compared to the entire record and ignored the risks he faced from cross-examination. Id. As the court explained, Evans's "own account placed him under the window with the cut screen after having parked his partially spray-painted truck a significant distance away before surreptitiously making his way to S.B.'s home." Id. The court dealt with Evans's contention that Grey said he couldn't testify in a footnote:

> During his testimony at the evidentiary hearing before the habeas court, Evans testified Grey actually *prevented* him from testifying. However, as it is formulated in his petition and on appeal, Evans' ineffective assistance of counsel claim is that Grey merely *failed* to call him as a witness after advising him not to testify. We accept this latter version of the argument as the one raised in the submissions and referenced in the certificate of probable cause.

Id. at 503 n.9.

Judge Duffy found the Supreme Court of South Dakota's decision reasonable under § 2254. Doc. 21 at 31–32. She "infer[red]" from the state trial judge's order on Evans's habeas petition that the judge had not believed Evans's testimony that Grey refused to let him testify. Id. at 31. And she found that the Supreme Court of South Dakota made this credibility finding explicit when it stated that "Grey acknowledged that the decision to testify was one for Evans alone, but Grey also explained that defendants rely on the advice of counsel when deciding whether to testify." Evans II, 9 N.W.3d at 503; Doc. 21 at 31.

Evans now objects, arguing that the Supreme Court of South Dakota never found that his testimony was not credible. Doc. 25 at 6–7. But Evans loses either way. The Supreme Court of South Dakota did not address Evans's testimony that Grey prevented him from testifying because Evans's claim in his state habeas petition and on appeal was that Grey "merely *failed*" to call him as a witness.[5] Evans II, 9 N.W.3d at 503 n.9. Federal courts generally may not consider a state petitioner's habeas claims unless the petitioner has (1) presented or "exhausted" those claims in state court; and (2) done so in accordance with state procedural rules so as to avoid a "procedural default." Shinn v. Ramirez, 596 U.S. 366, 371 (2022). Evans doesn't argue that he properly presented to the Supreme Court of South Dakota the claim that Grey was ineffective by preventing him from testifying, and res judicata would bar any attempt to present that claim now. Evans fares no better if the Supreme Court of South Dakota actually found that his testimony was not credible. AEDPA demands that a state court's factual determinations—including ones of credibility—"shall be presumed to be correct," and gives the petitioner "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) (en banc) ("The deference owed to the state trial court pursuant to § 2254(e)(1) includes deference to its credibility determinations."). Evans has not rebutted the presumption here. Indeed, it beggars belief that Grey, an experienced attorney who is board certified in criminal defense and knows that defendants have a right to testify, would prevent Evans

---

[5]On appeal, Evans repeatedly argued that Grey's ineffective assistance of counsel was discouraging and advising Evans not to testify. HAR at 40, 47–49, 52, 63–64. Evans's appellate brief contained only one fleeting reference to his testimony that Grey told him he couldn't. HAR at 53. The thrust of the argument on appeal was Grey was ineffective in discouraging Evans from testifying, not that Grey told Evans that he couldn't testify. It is thus understandable that the Supreme Court of South Dakota concluded that Evans had not presented the issue nor was it in the certificate of probable cause.

from testifying and then lie under oath about doing so. HR at 251–54, 262. Evans's objection is overruled.

Evans also argues that Grey had no reason not to call him as a witness once Judge Davis ruled that Kathy could testify about the other acts evidence. But Grey was still worried that the cross-examination on this evidence would go poorly, especially since Evans had pleaded guilty to a charge involving Kathy. Evans II, 9 N.W.3d at 503; HR at 219–24, 275. Grey also wanted to keep the jury focused on S.B.'s credibility and avoid Evans being cross-examined about his suspicious behavior on the night of the crime and the days thereafter. Evans II, 9 N.W.3d at 503–04; HR at 219–20, 263–74. Reasonable jurists could easily agree with the Supreme Court of South Dakota that Grey's advice to Evans not to testify was reasonable. They could also agree that Evans had failed to show prejudice.

### 4. Failure to Object to Jury Selection Proceedings

Evans alleges that his trial attorneys were ineffective by failing to object to Judge Davis's noncompliance with South Dakota's jury selection statutes and his subsequent dismissal of numerous jurors without cause. Doc. 1 at 5. Judge Davis started voir dire by explaining the jury selection process and asking the jury panel whether the length of the trial or the nature of the charges would make it impossible for them to be fair and impartial. CR at 1304–11. The parties, Judge Davis, and in turn each of the 24 potential jurors who raised their hands moved to chambers where Judge Davis questioned the jurors. CR at 1310–11, 2369–90; Evans I, 956 N.W.2d at 78. The examination of each juror was brief, usually involving one or two questions by Judge Davis and no questions by Evans's lawyers or the State.[6] Judge Davis dismissed 20 of the prospective

---

[6]Evans argues that Judge Duffy overstated his lawyers' involvement in the examinations by saying that the attorneys "sometimes" interposed questions. Doc. 25 at 2. The transcript shows that during the in-chambers voir dire proceedings, Eisenbraun asked three questions of a potential juror

jurors, including six who had personal experience with sexual assault, four who knew Evans or his family, and four for health reasons. CR at 2369–90. He asked whether there were any objections before he excused the first potential juror, but did not ask when dismissing the 19 thereafter. Id. Neither side objected to the in-chambers procedure or to Judge Davis's dismissal of any juror, nor did either party challenge any of the potential jurors for cause. Id.

The parties returned to the courtroom for voir dire where Eisenbraun questioned the potential jurors about the nature of the charges, spotting a liar, and reasonable doubt. CR at 2390– 2453. He succeeded in having three potential jurors struck for cause. Id. at 2426, 2444, 2454–55. Judge Davis excused three other potential jurors in chambers, the first because her daughter had been raped, the second because he had been accused of sexual assault, and the third because he himself had been raped. Id. at 2430–32. The attorneys did not question these three potential jurors, and neither side objected to the jurors being excused. Id. A bit later, Judge Davis made a record explaining that back in chambers, with all parties present, he "took it upon" himself to excuse a woman who was diabetic and "having issues." Id. at 2499. He also explained that he had excused a woman who was not one of the 55 potential jurors seated because she was having flashbacks to an incident when she was 18. Id.

Evans argued on direct appeal that Judge Davis had deviated from South Dakota's jury selection statutes by (1) summarily dismissing potential jurors on his own rather than waiting for counsel to conduct voir dire and make challenges for cause; and (2) not asking further questions of those potential jurors excused for work-related issues "or whether they could set aside any preconceptions." AR at 29–38; Evans I, 956 N.W.2d at 83. Evans contended that these violations

---

who said he was good friends with someone who lived near where the alleged crime occurred, CR at 2381–82, and that the prosecutor asked one question of a juror who knew Evans's family, CR at 2377–78. Neither side questioned any other jurors during the in-chambers proceeding.

constituted a structural error requiring reversal without any showing of prejudice. AR at 33. The Supreme Court of South Dakota rejected the structural error argument, concluding that Judge Davis's approach to voir dire did not render the trial fundamentally unfair. Evans I, 956 N.W.2d at 84–85. Although Judge Davis asked questions ordinarily handled by lawyers, the court explained, Evans still had the chance to examine the potential jurors for bias. Id. The court also rejected Evans's argument that Judge Davis abused his discretion by excusing some jurors but not others, finding that Evans had failed to show prejudice because he passed the jury for cause and did not challenge the impartiality of the jurors who heard his case. Id. at 85.

Evans alleged in Claim 3 of his state habeas petition that his attorneys were ineffective by not objecting to Judge Davis's violations of South Dakota's jury selection statutes. HR at 12–22. The state trial judge dismissed Claim 3 on res judicata grounds, concluding that the Supreme Court of South Dakota had already decided on direct appeal that Evans failed to show Judge Davis's style of jury selection caused him any prejudice. Id. at 110–11, 118–19. The Supreme Court of South Dakota affirmed, agreeing that res judicata applied to the prejudice prong of Claim 3. Evans II, 9 N.W.3d at 499–500. As the court explained, Evans could not establish prejudice without relitigating the court's decision that the jury selection process did not violate his right to a fair trial. Id. at 500.

Respondents argued in this Court that the res judicata holding barred review of Evans's ineffective assistance claim. Doc. 10 at 38–42. Judge Duffy disagreed, finding that it would "disserve justice" to hold that Evans's claim was exhausted for res judicata purposes but not for federal habeas purposes. Doc. 21 at 33–34. Respondents now object to Judge Duffy's finding, arguing that the Supreme Court of South Dakota's res judicata ruling bars further review by federal courts. Doc. 24.

Respondents' objection is overruled. The term "res judicata" in South Dakota encompasses both issue preclusion and claim preclusion:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

Piper v. Young, 936 N.W.2d 793, 804 (S.D. 2019) (cleaned up and citation omitted). Longstanding South Dakota habeas precedent makes clear that both variations of res judicata apply, meaning that a claim is barred if (1) the claim could have been raised on direct appeal but was not; or (2) the claim was raised and decided on direct appeal. Piper v. South Dakota, No. 20-CV-5074, 2024 WL 1348502, at *19 (D.S.D. Mar. 29, 2024) (collecting cases).

The Supreme Court of South Dakota applied issue preclusion to Claim 3 of Evans's state habeas petition because it would require relitigating an issue it decided in Evans's direct appeal. Evans II, 9 N.W.3d at 499–500. But this does not mean that Evans procedurally defaulted his claim that counsel were ineffective by failing to object to the jury selection proceedings. The Supreme Court in Cone v. Bell, 556 U.S. 449 (2009), made clear that a state court's refusal to revisit claims that it had previously decided does not bar federal habeas review. Id. at 466–67. Rather, a state court's application of issue preclusion to a claim "provides strong evidence that the claim has already been given full consideration by the state courts and thus is *ripe* for federal adjudication." Id. at 467; see also Buckingham v. Symmes, No. 11-CV-2489, 2012 WL 3611893, at *2–3 (D. Minn. Aug. 21, 2012) (holding that state court's refusal to reconsider claims it had decided on direct appeal did not procedurally bar federal habeas review). In such a case, federal courts apply AEDPA's deferential standards to the state court's decision on the merits, which is

what Judge Duffy did here. See Durr v. Mitchell, 487 F.3d 423, 434–35, 440 (6th Cir. 2007);

Daniels v. Kelley, No. 5:14CV00134, 2016 WL 5026855, at \*12 (E.D. Ark. Sept. 19, 2016).

Judge Duffy found reasonable the Supreme Court of South Dakota's decision that Evans

could not show prejudice since he had never argued that his jury was impartial. Doc. 21 at 35.

Showing juror bias is a common way of establishing prejudice on claims that counsel performed

ineffectively during voir dire. See, e.g., Sanders v Norris, 529 F.3d 787, 790–94 (8th Cir. 2008)

(holding that the petitioner's ineffective assistance claim failed for lack of prejudice because he

had not shown that the juror was partial); Krutilek v. Kenney, 125 F. App'x 93, 95 (8th Cir. 2005)

(unpublished) (per curiam) ("[B]ecause the jurors were not biased, Krutilek cannot show his

attorney's failure [during voir dire] prejudiced him."); Singleton v. Lockhart, 871 F.2d 1395, 1400

(8th Cir. 1989) (holding that petitioner could not show prejudice on his claim that counsel was

ineffective during voir dire when there was no evidence that juror in question was biased). Evans

does not argue that he can show Strickland prejudice in the normal sense, that is, by establishing a

reasonable probability that, but for his attorneys' failure during voir dire, the outcome of his trial

would have been different. He argues instead that it is impossible for him to show juror bias

because South Dakota law generally forbids inquiry into jury deliberations.

Evans's objection is overruled. First, petitioners establish that a juror was biased through

information provided during voir dire, not by inquiring into juror deliberations. The Supreme

Court of South Dakota reasonably found that Judge Davis's in-chambers process did not deprive

Evans of the chance to determine juror bias, Evans I, 956 N.W.2d at 84–85, and Eisenbraun

conducted a full voir dire back in the courtroom, CR at 2390–2453. Nothing prevented Evans

from arguing that a juror who sat on his case was impartial. Second, Evans is essentially arguing

that his attorneys' performance resulted in a structural error where prejudice is presumed. The

18

Supreme Court in <u>Weaver v. Massachusetts</u>, 582 U.S. 286 (2017), left open whether a petitioner must show normal <u>Strickland</u> prejudice when trial counsel's deficiency led to the type of structural error that always results in fundamental unfairness. <u>Id.</u> at 300. But Judge Davis's departure from South Dakota's jury selection statutes is not the type of error that always results in fundamental unfairness, and the Supreme Court of South Dakota reasonably found that the jury selection process did not make the trial fundamentally unfair. <u>See</u> <u>Meadows v. Lind</u>, 996 F.3d 1067, 1081 (10th Cir. 2021) (holding that the state trial court's "arbitrary exclusion of four hard-of-hearing prospective jurors" would not always result in fundamental unfairness because the "remaining jury pool may be completely unbiased and fair to the defendant"); <u>White v. Luebbers</u>, 307 F.3d 722, 727–29 (8th Cir. 2002) (declining to presume <u>Strickland</u> prejudice in a capital case where the defense attorney failed to ask potential jurors any questions about the death penalty during voir dire).

### C. Ground II: Search and Seizure on Pine Ridge Indian Reservation

Evans alleges in Ground II that he was denied due process and his Fourth, Fifth, and Fourteenth Amendment rights when state law enforcement officers entered the Pine Ridge Indian Reservation without a tribal warrant or authorization and seized evidence from him, his motel room, and his vehicle. Doc. 1 at 7. Judge Duffy found that Evans had procedurally defaulted the Fifth and Fourteenth Amendment portions of Ground II and that <u>Stone v. Powell</u>, 428 U.S. 465 (1976), barred consideration of the Fourth Amendment portion because Evans had a full and fair opportunity to litigate that claim in state court. Doc. 21 at 36–38.

Evans's objections to the report and recommendation do not address these findings at all. Rather, Evans makes a factual objection to Judge Duffy's description of the affidavit supporting the state court warrant for his person and vehicle and says that he reasserts the arguments "he

previously submitted." Doc. 25 at 1–2, 8. Evans fully litigated his Fourth Amendment claim in state court, State v. Evans, 956 N.W.2d 68, 85–88 (S.D. 2021); Evans v. Sullivan, 9 N.W.3d 490, 497, 500 n.8 (S.D. 2024), and Judge Duffy correctly found that Stone v. Powell bars him from further litigating it in this federal habeas action, 428 U.S. at 494 (holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" (footnote omitted)). Evans's federal remedy on his Fourth Amendment claim was to seek a writ of certiorari following the Supreme Court of South Dakota's ruling. Since Evans's Fourth Amendment claim is unreviewable on a § 2254 petition, his factual objection about the affidavit for the state court warrant is overruled as moot.

Evans does not explain why Judge Duffy was wrong that he procedurally defaulted the due process/Fifth Amendment portion of Ground II. Even if the claim were not procedurally defaulted, this claim would fail. Evans, a non-Indian, makes no attempt to explain how the state police violated *his* right to due process and a fair trial by executing a state search warrant on the Pine Ridge Indian Reservation. If Evans as a non-Indian is arguing that tribal sovereignty and a lack of jurisdiction precluded the state police from executing the warrant on the Reservation, the Supreme Court of South Dakota rejected that claim on the merits. Evans I, 956 N.W.2d at 85–88. Relying on Nevada v. Hicks, 533 U.S. 353 (2001), the court found no "possible conclusion" that the state police infringed on tribal self-government. Evans I, 956 N.W.2d at 88. Instead, the police acted with the assistance of tribal law enforcement to execute a state warrant on Evans as a non-Indian defendant for a crime that occurred off the reservation. Id. Evans is far from showing that

the Supreme Court of South Dakota's decision fails under AEDPA's deferential standard of review.

### D. Ground III: Kathy's Testimony

Evans alleges that Judge Davis violated his due process rights by admitting Kathy's other acts testimony. Doc. 1 at 8. In response to the motion to dismiss, Evans clarified that his claim is "whether the trial court's refusal to give a properly submitted limiting instruction at the time the evidence was presented to the jury violated [his] right to a fundamentally fair trial." Doc. 14 at 24.[7] Evans challenged the admission of Kathy's other acts testimony on direct appeal. Evans I, 956 N.W.2d at 78–83. The Supreme Court of South Dakota affirmed the admission of the testimony but held that Judge Davis had abused his discretion by failing to give Evans's proposed limiting instruction before Kathy testified. Id. at 82–83. This error did not require reversal, however, because Judge Davis included a limiting instruction in the final instructions and Evans had failed to show how the failure to give the instruction earlier prejudiced him. Id. Evans argued in his state habeas petition that Judge Davis's failure to give the instruction before Kathy testified violated his due process rights. HR at 28–30; Evans II, 9 N.W.3d at 498. The Supreme Court of South Dakota held that res judicata barred the claim because it was resolved on direct appeal. Evans II, 9 N.W.3d at 500 n.8, 504.

Evans argued to this Court that the Supreme Court of South Dakota's finding that Judge Davis abused his discretion "supports" his due process claim. Doc. 14 at 25. Judge Duffy concluded that even if Judge Davis's error violated the due process clause, Evans would still need to show not only that the Supreme Court of South Dakota's determination that the error was

---

[7]Respondents argued this was an alteration of Evans's claim, but Judge Duffy found that Evans had presented this claim in state court and that Respondents were not prejudiced by her considering it. Doc. 21 at 38 n.9. Respondents do not object to Judge Duffy's approach. See Doc. 24.

harmless failed under § 2254(d)'s deferential standard, but also that the error had a "'substantial and injurious effect or influence' on the outcome of his trial." Brown v. Davenport, 596 U.S. 118, 126–27 (2022) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). Judge Duffy found the Supreme Court of South Dakota's harmless error analysis reasonable under § 2254(d), noting that Evans had not explained why the court's decision was unreasonable or how Judge Davis's decision to only include the limiting instruction in the final instructions contributed to Evans's verdict. Doc. 21 at 40–41.

Evans does not make a specific objection to Judge Duffy's finding, but rather reasserts the argument he made when opposing Respondents' motion to dismiss. Doc. 25 at 8–9. Evans's objection is overruled. He has not shown that Judge Davis's decision to give the limiting instruction at the end of trial rather than when Kathy testified violated due process, let alone that the Supreme Court of South Dakota's harmless error analysis was unreasonable or that he could satisfy the Brecht standard.

### E.  Certificate of Appealability (COA)

A prisoner needs a COA to appeal a final order denying a § 2254 petition. 28 U.S.C. § 2253(c). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). A COA is claim specific, meaning that each claim individually must meet the substantial showing standard. See id. § 2253(c)(3) ("The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)."). To meet this standard, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (cleaned up and citation

omitted). Because reasonable jurists would not find this Court's rejection of Evans's claims wrong or debatable, this Court will not issue a certificate of appealability.

**IV.     Conclusion**

For the reasons stated above, it is

ORDERED that the Parties' objections, Docs. 24, 25, 26, to the Report and Recommendation are overruled. It is further

ORDERED that the Report and Recommendation, Doc. 21, is adopted and that Respondents' Motion to Dismiss Petition for Habeas Corpus Relief, Doc. 9, is granted.

DATED this 9ᵗʰ day of September, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

23